**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| MELINDA OLIVER-SMITH, | : | |
| *Plaintiff*, | : | Case No. 1:23-cv-276 |
| v. | : | Judge Jeffery P. Hopkins |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, *et al.*, | : | |
| *Defendants*. | : | |

**OPINION AND ORDER**

This matter is before the Court on cross-motions for judgment on the administrative record filed by Plaintiff Melinda Oliver-Smith ("Plaintiff" or "Oliver-Smith") and Defendants The Lincoln National Life Insurance Company and Duke Energy Corporation Long Term Disability Plan (collectively, "Defendants" or "Lincoln Insurance"). Also pending before the Court is Plaintiff's request to strike Exhibit 2 to Defendants' response or, alternatively, for leave to file a reply. These matters are ripe for review.

For the reasons stated below, the Court **DENIES** Defendants' Motion for Judgment on the Administrative Record (Doc. 40), **GRANTS IN PART** Plaintiff's Motion for Judgment on the Administrative Record (Doc. 41), and **DENIES** Plaintiff's Motion to Strike (Doc. 45). The Court **VACATES** Lincoln Insurance's January 5, 2023 adverse benefits determination and **REMANDS** Plaintiff's claim to Lincoln Insurance for further administrative proceedings consistent with this Order.

# I. BACKGROUND

## A. Plaintiff's Employment, Coverage, and Claim

Plaintiff Melinda Oliver-Smith brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA") following the termination of her long-term disability benefits ("LTD benefits"). She claims that these benefits are owed under the Duke Energy Long Term Disability Plan (the "Plan"). Along with other equitable relief, Plaintiff asks this Court to order her reinstatement to the Plan "for as long as she remains eligible" under its terms, to direct Lincoln Insurance to provide a "full and fair review" of her claim, to order Lincoln Insurance to "pay her monthly benefits" from approximately February 5, 2022, until at least August 2023, and to find that she was "entitled to Long-Term Disability benefits under the Plan's Terms." Doc. 41, PageID 2703; Compl., Doc. 1, ¶¶ 1, 6.

Oliver-Smith worked for Duke Energy Corporation ("Duke Energy") for nearly three decades. Doc. 38-1, PageID 1520. During the relevant period, she worked in Cincinnati, Ohio, as a Gas Systems Operator Mechanic II. Doc. 38-2, PageID 2130–32. Her duties included maintaining, repairing, and operating equipment used to regulate and distribute natural gas to Duke customers. *Id*. Plaintiff's position also required her to respond to emergencies, regulate gas pressure, purge gas mains, and perform other safety-sensitive work for which a mistake or lapse in judgment could create a risk of serious injury or death. *Id*.

As a Duke Energy employee, Oliver-Smith participated in the Plan, an employee-welfare-benefit plan governed by ERISA. Doc. 38-1, PageID 1435–88. Duke Energy sponsored the Plan, which provided disability coverage through a group insurance policy ("Group Policy" or "Policy") issued by Liberty Life Assurance Company of Boston (or

Lincoln Insurance).[1] *Id*. at PageID 1458, 1473–75. Lincoln Insurance administered claims under the Group Policy and the parties have conceded that the Plan provides that Lincoln Insurance possessed sole fiduciary responsibility to construe the Policy and determine benefit eligibility.[2] Doc. 10, PageID 51–52; Doc. 38-1, PageID 1474–78.

The Plan provides LTD benefits after a claimant completes the 180-day or six month "Elimination Period" defined as "a period of consecutive days of Disability or Partial Disability for which no benefit is payable." Doc. 38-1, PageID 1445, 1458. A claimant is "Disabled" when, because of injury or sickness, she is unable to perform the material and substantial duties of her "Own Occupation"; after 24 months of benefits, she must then be unable to perform "Any Occupation," in order to remain eligible for LTD benefits. *Id*. at PageID 1444. During the initial 24-month period, "Own Occupation" means "the Covered Person's occupation that [she] was performing when [her] Disability or Partial Disability began," as "normally performed in the national economy." *Id*. at PageID 1448. After 24 months, "Any Occupation" means "any occupation that the Covered Person is or becomes

---

[1] In 2018, Lincoln National Life Insurance Company purchased Liberty Life Assurance Company of Boston. Heins Decl., Doc. 42-1, PageID ¶¶ 2–5. In 2019, Lincoln National Life Insurance Company changed the name of Liberty Life Assurance Company of Boston to Lincoln Life Assurance Company of Boston. *Id.* Then, in 2021, Lincoln Life Assurance Company of Boston merged into Lincoln Insurance. *Id*. Hence, the Court refers to Liberty Life Assurance Company of Boston as "Lincoln Insurance."

[2] Section 7 Paragraph 2 of the Policy states: "Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding." Doc. 38-1, PageID 1475. However, the parties jointly stipulated that the LTD benefits at issue are fully insured through the Group Policy; that Lincoln was the Policy's claims administrator, with the sole fiduciary duty to construe the Policy and determine benefit eligibility; that the Duke Energy Benefits Committee had no role in determining Plaintiff's claim; and that Lincoln is fully responsible for sums due to Plaintiff under the Group Policy, including any fees and costs awarded by the Court. Doc. 10, PageID 51–52. The record further reflects that Lincoln National Life Insurance Company acquired Liberty Life Assurance Company of Boston in 2018; Liberty was renamed Lincoln Life Assurance Company of Boston in 2019; and that entity merged into Lincoln Insurance in 2021. Heins Decl., Doc. 42-1, ¶¶ 2–5. Thus, the Policy's references to "Liberty" and the parties' references to Lincoln reflect corporate succession, rather than a conflict over which entity administered Plaintiff's claim or possessed the Policy's discretionary authority.

reasonably fitted by training, education, experience, age, physical and mental capacity."[3] *Id.* at PageID 1443.

In February 2021, Oliver-Smith stopped working and filed a claim to receive LTD benefits under the Plan now being administered by Lincoln Insurance, as the successor to Liberty Insurance through a series of acquisitions and mergers. Heins Decl., Doc. 42-1, ¶¶ 2–5; *see also supra* note 1. Also in February 2021, Plaintiff was placed on short-term disability and coordinated leave. Doc. 38-1, PageID 1516–17; Doc. 38-4, PageID 2513. Plaintiff attributed her inability to work to panic disorder, major depressive disorder, generalized anxiety disorder, sleep-related difficulties, and associated symptoms. Compl., Doc. 1, ¶¶ 17, 18, 24. With Plaintiff's work stoppage, the clock began to run on the 24-month period that she was unable to perform her "Own Occupation," and when she would become eligible to receive LTD benefits under the Plan based on "the . . . occupation that [she] was performing when [her] Disability or Partial Disability began . . . ," as a Gas Systems Operator Mechanic II, whose duties included maintaining, repairing, and operating equipment used to regulate and distribute natural gas to Duke customers. Doc. 38-2, PageID 2130–31; Doc. 38-1, PageID 1448.

**B. Early Treatment and Initial STD Benefits Approval**

As support for her LTD benefits claim and to demonstrate that she is "Disabled" because of injury or sickness, and unable to perform the material and substantial duties of her "Own Occupation" during the initial 24-month period, Plaintiff relied on reports received

---

[3] It does not appear from the administrative record that Plaintiff's treating providers were, at all times, informed of, or asked to apply, the Plan's applicable "Own Occupation" standard. Nor does the record indicate that they were asked to distinguish that standard from the more demanding "Any Occupation" standard that applies after 24 months of LTD benefits. Accordingly, to the extent these providers opined that Plaintiff could or could not "return to work," those generalized statements are ambiguous.

from several health care professionals. The first came from Ms. Kay Mosgrove ("Ms. Mosgrove"), a Limited License Professional Counselor who she saw on February 23, 2021 for a mental-status evaluation. Ms. Mosgrove described Oliver-Smith as hyper-alert, hyper-vigilant, panicky, anxious, depressed, and tired. Doc. 38-4, PageID 2496–98. Ms. Mosgrove also diagnosed Oliver-Smith with unspecified anxiety and depression. *Id.* at PageID 2498. Although Plaintiff told Ms. Mosgrove that she expected her functional abilities to return to normal relatively quickly if she regained her job, Ms. Mosgrove concluded that Plaintiff could not function at work and had no ability to perform in a work setting at that time. *Id*. at PageID 2497.

Plaintiff then made an appointment to see her primary care physician, Dr. Geralynn Duell ("Dr. Duell"). Dr. Duell's notes recorded on February 26, 2021, stated that Plaintiff was exhibiting agitation, decreased concentration, nervousness, and anxiety. Doc. 38-4, PageID 2416. Dr. Duell diagnosed Oliver-Smith with generalized anxiety disorder and depression, recommended that she continue to take the medications she was prescribed—Xanax, Wellbutrin, and Trazodone—and continue seeing her therapist. *Id*. at PageID 2417–18. Dr. Duell also recommended maintaining her upcoming appointment with a psychiatrist. *Id.*

After receiving that diagnosis, Oliver-Smith began treatment with Nurse Practitioner Sheryl List ("Nurse List") in March 2021. Nurse List recorded symptoms similar to those described in the February 2021 records and reported that Plaintiff had no work capacity. Doc. 34-3, PageID 1161–63, 1169–72. Similar to Ms. Mosgrove's earlier assessment, Nurse List diagnosed Plaintiff with major depressive disorder and unspecified anxiety disorder and prescribed Risperidone. *Id*. at PageID 1171. A month later in April 2021, Oliver-Smith

reported having difficulty with Risperidone's side effects and reported less frequent panic attacks except when speaking with Duke Energy personnel. *Id*. at PageID 1108. Nurse List discontinued Plaintiff's dosage of Risperidone and prescribed Amitriptyline to improve Plaintiff's sleep. *Id*. at PageID 1110. Plaintiff later stopped treatment with Nurse List but continued treatment with Ms. Mosgrove and Dr. Duell. Doc. 38-2, PageID 2213.

In the face of Oliver-Smith's medical and treatment history, Lincoln Insurance approved Plaintiff's short-term-disability claim and paid benefits to Oliver-Smith for a total of six months from February 9 through August 9, 2021. Doc. 34-3, PageID 1024–26. When that temporary-benefits period ended, Lincoln Insurance started the process of evaluating whether Plaintiff qualified for LTD benefits under the Plan's "Own Occupation" standard. Doc. 38-2, PageID 2223–28.

**C. LTD Benefits Evaluation Determination**

On August 11, 2021, and still within the initial 24-month review period, Lincoln Insurance engaged Dr. Jesse Carr ("Dr. Carr"), a board-certified physician specializing in psychology and neurology to conduct the evaluation, in connection with Plaintiff's LTD claim for benefits. Doc. 38-2, PageID 2223–28, 2230–34; Doc. 34-3, PageID 993. As part of that process, Dr. Carr made attempts to contact the medical professionals treating Plaintiff, including Nurse List, Dr. Duell, and Ms. Mosgrove. Doc. 38-2, PageID 2230–31. However, Dr. Carr was unable to speak with any of them. *Id.* He nevertheless reviewed their progress notes. *Id*. at PageID 2230. The materials reviewed included an April 21, 2021 progress report which stated that the claimant's condition had improved, that the Klonopin prescription had helped, that the mental-status examination was unremarkable, and that the claimant was ready to return to work as early as five days later on April 26, 2021. *Id*. at PageID 2234.

Unbeknownst to Dr. Carr at the time, and as the record would later reveal, the April 21 progress report he reviewed suggesting that Plaintiff's condition was improving concerned another patient, not Oliver-Smith. Doc. 34-5, PageID 1401. Based in part on the erroneous information Dr. Carr had received and reported to Lincoln Insurance, Plaintiff's LTD benefits claim was initially denied on August 17, 2021. Doc. 38-2, PageID 2223–28.

Two days after the initial denial and still within the 24-month review period, Lincoln Insurance received additional records from Plaintiff's attorney that included Dr. Duell's July 2021 and August 2021 progress notes and her therapist Ms. Mosgrove's progress notes from February 2021 through August 2021. *Id.* at PageID 2169–70, 2175–77, 2184–99. The additional records reflected that Oliver-Smith had continuing anxiety, insomnia, and panic attacks. *See, e.g., id*. Among those materials was Dr. Duell's August 24, 2021 note reporting that Oliver-Smith had visited an emergency room with stroke-like symptoms, had been diagnosed with a panic attack, and that it was unsafe for her to work at that time. *Id*. at PageID 2169–70. Plaintiff appealed Lincoln Insurance's initial denial of her LTD benefits claim, asserting that the initial review included incorrect and misleading information. Doc. 38-2, PageID 2120–25. She also reported limited daily activities, sleep difficulty, and daily panic and anxiety that she believed made driving and working unsafe. *Id*. After reviewing the additional records, on August 31, 2021, Dr. Carr concluded that the evidence supported impairment from July 9, 2021 forward, subject to reassessment in three months. *Id.* at PageID 2164. Based on Dr. Carr's findings, Lincoln Insurance ultimately determined Plaintiff's "date of disability" was February 2, 2021 and thereafter approved LTD benefits for Oliver-Smith effective August 10, 2021. *Id.* at PageID 2135–39. The Plan also required, and Plaintiff applied

for and received, Social Security disability benefits, which offset Lincoln Insurance's LTD benefit obligation. *Id.* at PageID 2138, 2155–56.

**D. Continuing-Eligibility Review and Benefits Termination**

Between September 2021 and early 2022, Oliver-Smith continued medication management with Dr. Duell and therapy with Ms. Mosgrove. *Id.* at PageID 2081–83, 2088–91, 2119. On September 24, 2021, Dr. Duell recorded notes indicating that Plaintiff had a severe panic attack causing numbness to her left side, reduced ability to focus, tearfulness, and inability to interact with others, and directed Oliver-Smith to remain off work. *Id.* at PageID 2113–15. At Plaintiff's final recorded appointment with her therapist, Ms. Mosgrove described Plaintiff's progress as fair to poor and completed a restrictions form stating that Plaintiff continued to experience panic attacks and could not return to work. Doc. 38-1, PageID 1675; Doc. 38-2, PageID 2063.

In November 2021, Plaintiff began seeing therapists Francile Weil ("Ms. Weil"), a Licensed Independent Social Worker and Mary Kay Giovanetti ("Ms. Giovanetti"), a Licensed Professional Counselor. Doc. 38-1, PageID 1681–97; Doc. 38-2, PageID 2022. Ms. Weil's records reflect that Oliver-Smith continued to experience anxiety and panic attacks and diagnosed her with a panic disorder beginning in November 2021. Doc. 38-1, PageID 1681–97. In a January 12, 2022 letter, Ms. Giovanetti stated that she had treated Oliver-Smith since November 2021 and that Plaintiff continued to suffer from mental-health symptoms exacerbated by stress. Doc. 38-2, PageID 2022. Ms. Giovanetti opined that Oliver-Smith could not complete her job requirements because of impaired concentration, reduced energy, and inability to tolerate stress resulting in panic, emotional outbursts, and crying spells. *Id.* Dr. Duell's October through December 2021 records reflect continuing symptoms, an

increased Xanax dosage, and a recommendation that Plaintiff not return to work. *Id.* at PageID 2028–29, 2040–42.

In December 2021, after Lincoln Insurance had approved Plaintiff's LTD benefits effective August 10, 2021, and consistent with Dr. Carr's recommendation that her impairment be reassessed, Lincoln Insurance's claims examiner, Katherine Gentry ("Ms. Gentry"), requested updated medical records for Oliver-Smith to evaluate whether Plaintiff remained "Disabled" and to therefore have continued eligibility for LTD benefits under the Plan's "Own Occupation" standard. Doc. 38-1, PageID 1498; Doc. 38-2, PageID 2164. In turn, Ms. Gentry referred the updated records to Dr. Warren Taff ("Dr. Taff"), a board-certified psychiatrist Lincoln Insurance had contracted with to perform the review. Doc. 38-2, PageID 2008–13. Dr. Taff reported that he reviewed records from Ms. Mosgrove, Dr. Duell, the Neuropsych Center of Greater Cincinnati where Nurse List worked (*see, e.g.*, Doc. 34-5, PageID 1398), and an "Unknown Provider." Doc. 38-2, PageID 2008. Dr. Taff acknowledged that the records reflected Plaintiff's symptoms, however he concluded the symptoms were not sufficiently severe to limit psychiatric functioning and that the record did not contain clinical evidence supporting cognitive impairment through medical testing. *Id*. at PageID 2012.

Dr. Taff also noted that Plaintiff had not received a higher level of psychiatric care, such as an intensive outpatient program, partial hospitalization program, or inpatient hospitalization, and that her emergency-room visits did not result in hospitalization. *Id*. Dr. Taff ultimately concluded that Oliver-Smith had no supported level of impairment that translated into work restrictions and limitations from February 2, 2021 forward. *Id*. at PageID 2011–13. Based on Dr. Taff's review, Lincoln Insurance notified Oliver-Smith in a letter dated

February 18, 2022, that LTD benefits would not be payable after February 15, 2022. *Id.* at PageID 1985–89. All these events took place within the initial 24-month review period from the date Plaintiff stopped work and asserted her claim for LTD benefits under the Plan.

**E. Administrative Appeal**

On August 5, 2022, Plaintiff timely appealed Lincoln Insurance's decision to terminate her claim for LTD benefits through counsel who submitted additional supporting documentation. Doc. 38-1, PageID 1712–20, 1722. The submissions included, among other materials, additional records from Dr. Duell reporting frequent, severe panic attacks despite continued medication. Doc. 38-2, PageID 1975–79. Additional Dr. Duell records reflect Plaintiff's report that she was taking medication as directed but felt worse as a result. *Id*. at PageID 1954, 1956. Dr. Duell stated that Oliver-Smith remained unable to work safely and requested that disability-related inquiries be submitted in writing. *Id*. at PageID 1956. Other records reflect Plaintiff's report of thoughts about harming people associated with her workplace and a former therapist, as well as a report that she was beginning to hear things. *Id*. at PageID 1947. The record further reflects that Oliver-Smith had called Sun Behavioral about admission to an outpatient program. *Id*. at PageID 1947–49. In July 2022, Plaintiff reported that an appointment with a nurse practitioner at the University of Cincinnati had not gone well. Doc. 38-1, PageID 1934.

The therapist Plaintiff had been seeing, Ms. Giovanetti also submitted a letter describing six treatment sessions between November 2021 and January 2022. *Id*. at PageID 1723–24. The letter stated that Oliver-Smith's condition had worsened after Lincoln Insurance terminated LTD benefits as of February 15, 2022. *Id.* In addition to Giovannetti's letter, Ms. Weil, the other therapist Plaintiff had received treatment from, submitted a letter

stating that Oliver-Smith's panic disorder contributed to her inability to work. *Id*. at PageID 1727.

Plaintiff's attorney also included with the appeal materials the March 28, 2022 psychological examination conducted by Dr. Craig Cabezas ("Dr. Cabezas"), a licensed clinical psychiatrist. Doc. 38-1, PageID 1916–24. Dr. Cabezas had examined Plaintiff in connection with her claim to receive Social Security disability benefits. *Id.* Dr. Cabezas described Oliver-Smith as nervous, edgy, fearful, and uncertain, and stated that her anxiety affected her ability to concentrate and focus. *Id*. at PageID 1920. He also assessed Plaintiff's insight and reasoning as likely below average but not significantly impaired. *Id*. Dr. Cabezas assessed Plaintiff as generally capable in comprehension, memory, concentration, cognitive skills, and social interaction; he rated her social interaction as adequate and her concentration as less than adequate. *Id.* at PageID 1922–23. Dr. Cabezas did not rate Oliver-Smith's functional ability in the "not at all capable" category. *Id*. at PageID 1922. However, in October 2022, the Social Security Administration found Oliver-Smith disabled under its regulations with an onset date of February 2, 2021. *Id.* at PageID 1590–93.

Once Plaintiff's administrative appeal was finalized, Kerri Younker ("Ms. Younker"), a Lincoln Insurance benefits manager, was assigned to administer the claim. Doc. 38-1, PageID 1492–93. Up to that point, Ms. Younker had no involvement with Lincoln Insurance's decision to terminate LTD benefits. *Id*. On September 2, 2022, and still within the initial 24-month review period under the Plan, Ms. Younker requested that a third-party vendor, MLS, refer a physician to provide an opinion regarding Oliver-Smith's functional capacity. *Id*. Plaintiff continued to supplement the record in her appeal, and Lincoln Insurance forwarded all those materials to MLS. *Id*.

Dr. Barbara Center ("Dr. Center"), a board certified psychiatrist, performed the appeal-level medical review for Lincoln Insurance. Doc. 38-1, PageID 1637–47. As part of her review, Dr. Center attempted several times to contact Dr. Duell. *Id*. at PageID 1638–39. In connection with a call made on September 19, 2022, someone in Dr. Duell's office assured Dr. Center that they would seek to have the call returned, but Dr. Duell did not return the call or request written questions from Dr. Center. *Id* at PageID 1638.

In her review of Plaintiff's medical file, Dr. Center identified workplace-related stressors in the treatment records, including Plaintiff's reported difficulty with coworkers, her employee's union, and conflicts with her supervisor. *Id.* at PageID 1645–47. Dr. Center also concluded that Plaintiff's 2019 and 2020 emergency-room visits for limb numbness or weakness were associated with dental extractions and abdominoplasty rather than a need for intensive psychiatric treatment. *Id*. at PageID 1643–44. Dr. Center noted that Oliver-Smith reported staying in bed and had discontinued care with psychiatric providers after unsatisfactory experiences, but that she remained able to care for herself and visit family members. *Id*. at PageID 1639–45. Ultimately, Dr. Center concluded that the record did not support functional restrictions or limitations, citing Plaintiff's activities, absence of active danger to herself or others, absence of a higher level of psychiatric care, limited changes in psychotropic medication, and an absence of any psychiatric hospitalization resulting from alleged panic attacks. *Id*. at PageID 1645–47.

On September 23, 2022, Ms. Younker sent Dr. Center's review to Plaintiff's counsel and provided an opportunity for her to respond. *Id.* at PageID 1623–24. On October 21, 2022, Plaintiff submitted a response asserting that Dr. Center had failed to address Ms. Weil's opinion letter and counseling records. *Id.* at PageID 1608–11. Plaintiff also submitted Ms.

Weil's October 20, 2022 letter, which stated that anxiety, panic, and medication side effects seriously affected Plaintiff's ability to perform her job duties. *Id.* at PageID 1612–14.

Dr. Center reviewed the additional information and issued an addendum on November 8, 2022. *Id*. at PageID 1595. Dr. Center acknowledged that Plaintiff had a history of anxiety, depression, and panic disorder, but noted that Plaintiff had not provided specific information about alleged side effects from the medication she had been prescribed. *Id*. at PageID 1595–98. Dr. Center concluded that Oliver-Smith's low motivation was not functionally disabling and that the record did not support an impairment preventing Plaintiff from participating in her usual activities. *Id*.

After additional communication between Plaintiff's counsel and Lincoln Insurance, Ms. Younker requested that Dr. Center review Ms. Weil's records and letters, particularly those dated July 25 and October 20, 2022, and address Plaintiff's alleged panic-related symptoms, including shortness of breath, rapid heartbeat, impaired focus or concentration, distractibility, numbness, and paralysis. *Id*. at PageID 1574–75. Dr. Center responded that the records reflected subjective complaints but did not document ongoing shortness of breath, rapid heartbeat, impaired focus or concentration, or distractibility. *Id*. Dr. Center also found no documentation of paralysis and no evidence that Plaintiff's intermittent panic attacks caused significant functional impairment. *Id*.

**F. Final Administrative Appeal Decision**

On January 5, 2023, nearly two years after Plaintiff stopped work and filed her claim for LTD benefits but still within the 24-month initial review period under the Plan, Lincoln Insurance issued its final appeal determination. *Id*. at PageID 1526–36. Lincoln Insurance concluded that the record contained insufficient psychiatric findings, diagnostic test results,

or other medical documentation to establish impairments or symptoms of sufficient severity, frequency, and duration to impose restrictions or limitations preventing Oliver-Smith from performing her "Own Occupation" after February 15, 2022. *Id*.

Lincoln Insurance also explained that documents in Plaintiff's file reflected workplace-relationship difficulties and stated that the Group Policy did not consider conditions related to interpersonal workplace conflict disability. *Id*. at PageID 1533. Lincoln Insurance further stated that it considered the Social Security Administration's disability decision but that the Social Security Administration does not determine entitlement to benefits under the terms and conditions of Duke Energy's LTD benefits Plan. *Id*. at PageID 1534. Thereafter, Plaintiff brought this action under 29 U.S.C. § 1132(a)(1)(B), challenging the administrator's final decision.

## II. LAW AND ANALYSIS

### A. Plaintiff's Motion to Strike

As a threshold matter, Plaintiff moves to strike Exhibit 2 attached to Defendants' response memorandum (Doc. 42-2). According to Plaintiff, Exhibit 2 consists of a chart identifying statements in Plaintiff's merits brief that Defendants contend are inaccurate, incomplete, or misleading. *Id*. Plaintiff contends the chart impermissibly expands the administrative record, contains inaccurate factual assertions, and will confuse the issues. At the very least, she states she should be granted leave to file a reply. Doc. 45, PageID 2863–71.

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A response memorandum and an exhibit attached to it are not pleadings

within the meaning of Federal Rule of Civil Procedure 7(a). *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) ("Exhibits attached to a dispositive motion are not 'pleadings' within the meaning of Fed. R. Civ. P. 7(a) and are therefore not subject to a motion to strike under Rule 12(f)."); *see also* Fed. R. Civ. P. 7(a). Rule 12(f) therefore does not authorize the requested relief. Besides, this Court need not consider Exhibit 2 in the face of an already fully-developed administrative record in this case. *See* Doc. 42-2, PageID 2777–2785. Generally, judicial review is limited to the evidence that was before the administrator when the decision being challenged was made. *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010). Because Exhibit 2 attached to Defendants' responsive memorandum fails to qualify as "pleadings" within the meaning of Fed. R. Civ. P. 7(a) and is therefore not subject to a motion to strike under Rule 12(f), Plaintiff's Motion to Strike is denied and the request to file a reply to it is likewise denied as moot.

### B. Cross-Motions for Judgment on the Administrative Record

#### 1. Standard of Review

We turn next to the other procedural question raised by Plaintiff: what standard of review should this Court apply in connection with the appeal from the administrator's decision to deny Plaintiff's LTD benefits claim, *de novo* or the far more deferential arbitrary and capricious standard of review? The Supreme Court has established that a denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Following *Firestone,* the Sixth Circuit has held that, if a plan expressly grants to the administrator such discretion the district court must review the administrator's denial of

benefits under the highly deferential arbitrary and capricious standard of review. *Moos v. Square D Co.,* 72 F.3d 39, 41 (6th Cir. 1995); *see also Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) (courts review an ERISA plan administrator's denial of benefits *de novo* "unless the plan gives the administrator discretionary authority to determine eligibility for benefits") (citation omitted).

Here, the LTD Plan from which this dispute arises states that "Liberty [Assurance] shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder." Doc. 38-1, PageID 1475. In a somewhat confusing manner, given the parties' concession (*see supra* note 2), Plaintiff contends that the *de novo* standard of review should apply because the Group Policy states that "Liberty," not Lincoln Insurance shall "construe the terms of this policy and determine benefit eligibility hereunder." *See* Doc. 41, PageID 2725–26. This argument is without merit and borders on being specious.

*a. <u>Lincoln Insurance Succeeded to Liberty's Discretionary Authority</u>*

As noted, from 2018 to 2021, through a series of acquisitions and mergers, Liberty Life Assurance Company of Boston merged with Lincoln Insurance. After the merger, Lincoln Insurance became owner of the Group Policy and took over administrative responsibility for construing the Plan and determining benefits. Heins Decl., Doc. 42-1, ¶¶ 2–5; *see also* supra note 1. Under the circumstances, Lincoln Insurance became the successor to the interests of Liberty and with that change took exclusive control over all decision making authority to determine benefits and interpret the Plan formerly exercised by Liberty. *See Williams v. Hartford Life and Acc. Ins. Co.*, No. C-2-08-128, 2009 WL 3127761, at *7–9 (S.D. Ohio Sep. 25, 2009) (holding that one company's acquisition of another transferred the discretionary authority conferred under the ERISA plan, warranting arbitrary-and-capricious review);

*Taylor v. Liberty Life Assurance Company of Boston*, No. 20-12312-LTS, 2022 WL 3108810, at *2–3 (D. Mass. Aug. 4, 2022) (holding that Lincoln assumed all the powers conferred by the Group Plan, including the discretionary authority to make benefits decisions).

*b. Lincoln Properly Exercised Discretionary Authority*

Plaintiff next argues that Lincoln Insurance improperly exercised its discretionary authority as Plan administrator. According to Plaintiff, because the administrator relied on paid file reviewers' opinions without conducting any independent analysis or Plan interpretation, the appeal of Lincoln Insurance's decision denying LTD benefits must be reviewed under a *de novo* standard. Plaintiff cites the unpublished *Thompson v. J.C. Penney Co.*, No. 00-3504, 2001 U.S. App. LEXIS 18129 (6th Cir. Aug. 7, 2001) for support.

Plaintiff's reliance on *Thompson* is misplaced. *Thompson* does not stand for the proposition that a *de novo* review of an ERISA plan administrator's decision to deny benefits is warranted in every case involving an outside file reviewer. In *Thompson*, the Sixth Circuit applied the *de novo* review standard because the administrator who had been granted discretionary authority in that case never provided the claimant with an interpretation of the plan or an explanation for why the claim for benefits was denied. *Id*. at *10–12. Under those circumstances, the Circuit said in *Thompson* that there was "nothing to which the court can defer." *Id*. at *12. In that case, also, the Circuit was not so much concerned with whether the administrator had used outside professionals in the claims process but more with the fact that that the administrator had not made or communicated to the claimant a reasoned, plan-based benefits determination supporting its decision to deny benefits. *Id*. at *12. That is not the case here.

Here, the record shows that Lincoln Insurance properly identified the Plan's governing eligibility requirements, applied those requirements to Plaintiff's claim, and summarized the medical records and other information from Plaintiff's medical history used to support its final determination. Doc. 38-1, PageID 1526–36. Lincoln Insurance therefore made a discretionary, Plan-based benefits determination and the third-party medical file reviewers merely supplied medical opinions used in Lincoln Insurance's final evaluation of Plaintiff's claim. Unlike *Thompson*, the administrative record here contains a fully explained final decision which the Court must afford deferential treatment, barring evidence that the administrator had a conflict of interest. *Cf. Thompson*, 2001 U.S. App. LEXIS 18129, at *10–12; *Moos*, 72 F.3d at 41.

*c. <u>The Claims-Procedure Deficiencies Do Not Alter the Standard of Review</u>*

Plaintiff attempts to make an end run around the only exception to the highly deferential arbitrary and capricious standard of review found in cases where it has been shown that the administrator held a conflict of interest during the claims determination process. Plaintiff argues that "Lincoln's actions deviate[d] from ERISA and claim regulations, making the denial *de facto* arbitrary; and no deference is due." Doc. 41, PageID 2726. We see no such evidence that would justify the Court abandoning the arbitrary and capricious standard based on Plaintiff's argument.

29 C.F.R. § 2560.503-1(h)(1) requires a plan to provide a claimant with a reasonable opportunity to appeal an adverse benefit determination and to obtain a "full and fair review" of the claim and the adverse determination. In addition, 29 C.F.R. § 2560.503-1(h)(2)(ii) and (iv), provide that the plan's procedures must permit the claimant to submit written comments, documents, records, and other information relating to the claim and must require the appeal

reviewer to *take account* of all such information, regardless of whether it was submitted or considered in the initial benefit determination. *See Balmert v. Reliance Standard Life Insurance Co.*, 601 F.3d 497, 502 (6th Cir. 2010) (describing § 2560.503-1(h)(2) as setting out the "essential procedural requirements for a full and fair review").

Plaintiff cites *VanderKlok v. Provident Life & Acc. Ins. Co.*, 956 F.2d 610 (6th Cir. 1992), a case which held that an insurer or plan administrator's failure to provide a claimant with timely written notice of denial of benefits when it sent the denial to the wrong company and the failure to provide specific reasons for that denial violated ERISA and required remand. *VanderKlok*, 956 F.2d at 616–18. Plaintiff also cites 29 C.F.R. § 2560.503-1(l)(2)(i), which states that failure to "strictly adhere" to the claims procedures entitles a plaintiff to *de novo* review. *See also Dougharty v. Metropolitan Life Insurance Co. of America*, No. 3:24-CV-83-TAV-DCP, 2025 WL 747505, at *5–6 (E.D. Tenn. Mar. 7, 2025) (concluding that the administrator's untimely written response to a disability-benefits calculation appeal constituted a failure to strictly adhere to the applicable claims-procedure regulation and therefore warranted *de novo* review under § 2560.503-1(l)(2)); *Card v. Principal Life Ins. Co.*, No. 5:15-139-KKC, 2023 U.S. Dist. LEXIS 156292, at *24 (E.D. Ky. Sep. 5, 2023) ("Therefore, if subsection(l)(2)(i) applies, [the plaintiff] is entitled to *de novo* review.").

Here, Plaintiff's objections fail to establish that any procedural defects occurred or that Lincoln Insurance did not provide specific reasons for the denial that violated ERISA. True, ERISA requires written notice that sets forth the specific reasons for a benefits denial in a manner calculated so they are understood by the claimant. 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503-1(g)(1)(i). But that is exactly what occurred here. The record demonstrates that Lincoln Insurance timely notified Plaintiff of its determinations at every level of review.

Moreover, Lincoln Insurance provided thorough explanations for each decision. Plaintiff's LTD benefits were initially approved effective August 10, 2021 and she was awarded and received approximately six months of LTD benefits. Following a subsequent review, Lincoln Insurance denied additional benefits effective February 15, 2022. Plaintiff received notice of those determinations through letters dated August 17, 2021, and February 18, 2022, respectively. *See* Doc. 38-1, PageID 1526–36; Doc. 38-2, PageID 1985–89, 2223–27.

Turn to Plaintiff's other procedural contention. Plaintiff argues strenuously that Lincoln Insurance used flawed processes when it denied her LTD benefits claim. There, she argues that Lincoln Insurance did not provide certain materials regarding her medical history to its reviewers and that Dr. Center, Lincoln Insurance's outside consultant, failed to consider evidence from her treating physicians and other health care providers, including Ms. Weil, Ms. Giovanetti, Dr. Duell, and Dr. Cabezas, a licensed clinical psychiatrist employed by the Social Security Administration, who declared her disabled. Doc. 41, PageID 2730–33. The record on appeal fails to substantiate Plaintiff's assertion. During the administrative appeal, Plaintiff submitted supporting documentation, including provider records, therapist letters, updated medical records, and other information bearing on her asserted psychiatric impairment and functional limitations. Doc. 38-1, PageID 1712, 1722–27.

Moreover, Dr. Center's report identifies and discusses records that correspond to the materials Plaintiff asserts were not considered. *Id.* at PageID 1637. For example, it lists Positive Pathways among the records reviewed and summarizes treatment encounters corresponding to notes attributed to Ms. Weil. *Id*. at PageID 1637, 1642, 1681–97. Similarly, the report identifies Mercy Health records and describes an August 22, 2022 treatment

encounter that corresponds to Dr. Duell's August 22 progress note. *Id*. at PageID 1641–42, 1698.

Finally, Dr. Center's report lists Dr. Cabezas's psychological evaluation among the materials she received and reviewed. *Id*. at PageID 1637. The absence of an express discussion of each item in Dr. Center's report does not, by itself, establish that she failed to take into account each submitted item. *See Balmert*, 601 F.3d at 501–05 (rejecting a challenge under § 2560.503-1(h)(2)(iv) where the record showed that the administrator considered additional evidence submitted on appeal but ultimately found it insufficient to establish disability); *see also Avery v. Sedgwick Claims Management Services, Inc.*, No. 22-1960, 2023 WL 4703865, at *5–6 (6th Cir. July 24, 2023) (rejecting a full-and-fair-review challenge where the record demonstrated consideration of the claimant's appeal comments notwithstanding the reviewers' failure to address each comment with particularity).

The remainder of the appeal process further confirms that Lincoln Insurance considered the totality of Plaintiff's submissions. Lincoln Insurance gave Plaintiff's counsel Dr. Center's initial report before issuing a final determination on Plaintiff's claim for LTD benefits and permitted Plaintiff to respond. Doc. 38-1, PageID 1492, 1623–24. In her response, Plaintiff asserted that Dr. Center had not addressed the conditions reported in Ms. Weil's records and opinion letter which had already been provided. *Id*. at PageID 1608–14. Plaintiff also followed up by supplying Ms. Weil's October 20, 2022 letter. *Id.* Upon receipt of Plaintiff's response and Ms. Weil's letter, Lincoln Insurance withheld giving a final decision on Plaintiff's claim for LTD benefits, and instead referred the additional information received from Plaintiff to Dr. Center, who issued a November 8, 2022 addendum addressing the new material. *Id*. at PageID 1595–98. After receiving more comments from Plaintiff's

counsel, Ms. Younker specifically requested that Dr. Center review Ms. Weil's July 25 and October 20, 2022 letters and address Plaintiff's asserted panic-related symptoms. *Id*. at PageID 1574–75. Dr. Center responded to that request and after reviewing the additional materials submitted, reached the same conclusions she had earlier finding no medical support for declaring that Plaintiff was impaired in her professional opinion as a board-certified psychiatrist—an opinion which Lincoln Insurance's administrator relied upon before issuing the final decision on January 5, 2023 denying Plaintiff's claim for LTD benefits. *Id*. at PageID 1526–36, 1574–75.

Accordingly, the appeal from the administrator's decision in the instant case does not warrant application of the *de novo* review standard of review. Here, the administrator provided the claimant with an interpretation of the Plan, an explanation of her decision, and otherwise strictly adhered to the claims procedure. Plaintiff has not sufficiently demonstrated that a violation of the Plan or ERISA's claims-procedure occurred which would trigger the consequences of § 2560.503-1(l). *See* 29 C.F.R. § 2560.503-1(l)(2)(i) (where a plan "fails to strictly adhere" to all procedural requirements, "the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary"); *Card*, 2023 U.S. Dist. LEXIS 156292, at *24.

**2. Lincoln Insurance's Denial of Benefits was Arbitrary and Capricious**

Having found no reason to deviate from the arbitrary-and-capricious standard of review, the Court reviews Lincoln Insurance's administrator's decision to terminate Plaintiff's LTD benefits under that standard. *See Farhner v. United Transp. Union Discipline Income Protection Prog.*, 645 F.3d 338, 342 (6th Cir. 2011) (explaining that the plaintiff whose benefit claims have been denied bears the burden of proving on appeal in the district court that the

denial of benefits was arbitrary and capricious). When the district court reviews the appeal under the arbitrary-and-capricious standard, the question is not whether the Court would have reached the same benefits determination in the first instance. Rather, the Court is tasked with determining whether Lincoln Insurance's decision resulted from a deliberate, principled reasoning process and whether it was rational in light of the Plan and supported by substantial evidence in the administrative record. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000); *Kalish v. Liberty Mut./Liberty Life Assurance Co.*, 419 F.3d 501, 506 (6th Cir. 2005). A decision is not arbitrary and capricious merely because the record could support a contrary conclusion. So long as the administrator offers a reasoned explanation, grounded in an objective review of the record that is consistent with the Plan, the Court must uphold it. *Kalish*, 419 F.3d at 506; *see also Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992) (explaining that the test for whether an insurance company's decision to deny benefits is "not" whether the decision was "*correct*," but rather if "the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial").

*a. The Erroneous April 21, 2021 Report in the Record*

Plaintiff argues that Lincoln Insurance's termination decision was arbitrary and capricious because Dr. Taff's February 2022 peer-review report referenced an April 21, 2021 progress report, Doc. 34-5, PageID 1401, that later proved to belong to a different patient other than Plaintiff. Doc. 41, PageID 2730–32. However, the record in this case is devoid of any proof showing that the April 21 note materially affected Lincoln's termination decision. Here, the record shows that Lincoln Insurance's final decision was based, in large part, on the medical assessment of Plaintiff's condition by Dr. Center, the board certified psychiatrist the administrator hired through its consultant, MLS, to perform the final medical review during

the administrative appeal. The record further demonstrates that Dr. Center based her opinion of Plaintiff's mental condition exclusively on an evaluation of Plaintiff's patient notes or medical records which led her to conclude that they did not establish disabling psychiatric restrictions or limitations. S*ee* Doc. 38-1, PageID 1637–47. Nothing contained in the record suggests that Dr. Center relied on the erroneous April 21 report pertaining to someone other than Plaintiff as a basis for reaching the views concerning Plaintiff's lack of "Disability" she expressed. The administrator's decision to deny Plaintiff's claim on that basis alone is therefore without merit, given that the erroneous April 21 progress report for another patient played no role in the decision.

*b. Lincoln Insurance's Reliance on File Reviews Conducted by Peer Reviewers*

Plaintiff finds more solid footing on the next argument she raises. She contends that Lincoln Insurance acted arbitrarily and capriciously by relying exclusively on file reviews conducted by its outside consultants, Drs. Carr, Taff, and Center. According to Plaintiff, courts have mandated that in cases where the injuries are psychological and not physical in nature, an ERISA plan administrator must obtain an independent in-person psychiatric examination of the claimant from a qualified physician before denying benefits. Doc. 41, PageID 2729–30. However, nothing in the ERISA statute or the Code of Federal Regulations states categorically that a plan administrator must obtain an independent medical examination before denying benefits. Nor is reliance on file reviews inherently improper, even where the reviewing physician disagrees with treating providers of the claimant. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 297 n.6 (6th Cir. 2005); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

But the absence of an in-person examination by a qualified physician where the injury allegedly sustained is psychological rather than physical in nature is a relevant consideration in determining whether the administrator engaged in a deliberate and principled decision-making process. *See Smith v. Bayer Corp. Long Term Disability Plan*, 275 Fed. App'x 495, 508 (6th Cir. 2008) ("An examination could have helped the plan administrator to better evaluate the severity of [the plaintiff's] symptoms."). That consideration may carry particular weight in a psychiatric-disability claim because a file review may be an inadequate basis for assessing the severity and functional effects of mental-health symptoms. *Id.*

Here, Plaintiff's alleged condition was purely psychological; the physical manifestations were merely ancillary. Moreover, Plaintiff's treatment records and providers' letters consistently described Plaintiff as experiencing panic attacks, heightened anxiety, depression, tearfulness, insomnia, fatigue, difficulty focusing, emotional lability, and claimed medication effects. *See*, *e.g.*, Doc. 38-2, PageID 1947–49, 1954–56, 1975–79, 2022, 2028–29, 2040–42, 2113–15; Doc. 38-1, PageID 1612–14, 1723–27. Several providers, including her treating physician Dr. Duell, who remained in charge of Plaintiff's medication management, and her therapist, Ms. Mosgrove, opined that Plaintiff could not return to work. Doc. 38-1, PageID 1612–14, 1723–27; Doc. 38-2, PageID 1956, 2022, 2028–29, 2040–42.

The critical determination associated with Plaintiff's denied LTD benefits claim centered on whether Plaintiff remained able to perform her "Own Occupation," as a Gas Systems Operator Mechanic II, whose duties included maintaining, repairing, and operating equipment used to regulate and distribute natural gas to Duke customers. Doc. 38-1, PageID 1443–48; Doc. 38-1, PageID 1526–36. Under the circumstances, Lincoln Insurance's medical consultants' reliance on medical records alone were inadequate for assessing the severity and

functional effects of Plaintiff's mental-health symptoms. An examination could have aided the Plan administrator in this case with better evaluating the severity of Plaintiff's symptoms and their effect on her ability to perform her "Own Occupation."[4]

The reports and physician notes were material because the Group Policy applies an "Own Occupation" standard during the 180-day Elimination Period and the first 24 months for which LTD benefits are payable. Under that standard, Plaintiff must be unable to perform "the Material and Substantial Duties of [her] Own Occupation." Doc. 38-1, PageID 1443–48. Plaintiff's own occupation involved very serious and potentially hazardous work, including operating, maintaining, and repairing gas-distribution equipment; responding to emergencies; regulating gas pressure; and performing other work in which a lapse in judgment or attention could pose a very high risk of serious injury or death to members of the public, Plaintiff or her co-workers. Doc. 38-2, PageID 2104–5. Thus, the central issue was not simply whether Plaintiff carried psychiatric diagnoses. It was whether the symptoms and effects of the medications Plaintiff had been prescribed materially impaired her capacity to safely and reliably perform the safety-sensitive position at which she had been employed—her "Own Occupation."

Lincoln Insurance had a readily available means to resolve that fact intensive question: an in-person psychiatric or psychological examination that the Plan expressly authorized. Doc. 38-1, PageID 1474. Yet, it elected to rely exclusively on paper reviews by its non-examining physician consultants. *Id.* at PageID 1526–36. In doing so, Lincoln Insurance

[4] Because Lincoln had approved Plaintiff's LTD benefits effective August 10, 2021, and later terminated those benefits on February 16, 2022, the appeal concerned a period that remained within the Plan's first 24 months of LTD benefits. The governing question on appeal was therefore whether Plaintiff remained unable to perform the material and substantial duties of her "Own Occupation," not whether she could perform "Any Occupation." *See* Doc. 38-2, PageID 1985–89, 2135–39; Doc. 38-1, PageID 1443–48.

discounted or found insufficient the opinions of providers who had personally observed Plaintiff without obtaining its own direct clinical assessment of the symptoms, presentation, and functional limitations that were central to the claim. *Id.* Although an administrator need not automatically credit a claimant's treating-provider opinions, it must provide a reasoned basis for disagreeing with those opinions. *Calvert*, 409 F.3d at 296–97. On this record, the availability of firsthand clinical observations from Plaintiff's providers did not make an independent in-person examination unnecessary; it underscored the value of obtaining one before rejecting their conclusions regarding Plaintiff's ability to function and return to work.

It also did not help that Lincoln Insurance was unable to obtain further clarification or follow-up from Dr. Duell, Plaintiff's primary care physician and an "Unknown Provider" listed in Lincoln Insurance's medical reports. Doc. 38-2, PageID 1956, 1985–89, 2015–16. Dr. Center made an effort but could not reach Dr. Duell, and the record reflects no meaningful follow-up after counsel provided corrected contact information for Mosgrove, the therapist who had the most recent treatment history with Plaintiff. A plan administrator may not simply discredit subjective symptoms or reject treating-source opinions through unsupported credibility judgments made without personally examining the claimant. *See Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 548–50 (6th Cir. 2015).

Lincoln Insurance's treatment of the SSA award reinforces that concern. Lincoln Insurance required Plaintiff to pursue Social Security disability benefits and benefitted from the resulting offset, yet it did not meaningfully explain why the SSA's finding that Plaintiff was disabled beginning February 2, 2021, or why the evidence underlying that finding, did not support limitations preventing Plaintiff from safely performing the material and substantial duties of her own occupation. Doc. 38-1, PageID 1532–34. True, the SSA applied

different disability standards than those under the Plan and its decision making was based on a different process. But, having required Plaintiff to seek SSDI benefits while reaching the opposite result on substantially overlapping evidence, Lincoln Insurance's limited explanation provides additional support for the conclusion that its determination, based only on file reviews, did not adequately address the functional evidence bearing on Plaintiff's claim. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 117–18 (2008); *Calvert*, 409 F.3d at 293–94. In context, Lincoln Insurance's failure to reconcile that contrary finding further illuminates the concern that it rejected the functional evidence supplied by Plaintiff and her treating clinicians without obtaining an in-person evaluation capable of addressing the disputed symptoms and limitations.

On balance, Lincoln Insurance's sole reliance on file reviews was inadequate. *Smith v. Continental Cas. Co.*, 450 F.3d 253, 263 (6th Cir. 2006) (under arbitrary-or-capricious review, where credibility determination was key component of assessing disability, reliance solely on file review, without an independent examination, was inadequate). Lincoln Insurance discounted Plaintiff's providers' functional opinions that Plaintiff could not return to work and did not meaningfully reconcile its contrary determination with the SSA award, from which it stood to benefit through an offset. Those shortcomings materially weaken the thoroughness and reliability of Lincoln Insurance's review and support the Court's overall conclusion—based on the totality of the circumstances addressed in this Order—that its January 5, 2023 final denial was arbitrary and capricious.

**3. Remedy**

Having concluded that Lincoln Insurance's final determination was arbitrary and capricious, the Court must determine the appropriate remedy. In an ERISA benefits action,

the Sixth Circuit has held that a district court may either award benefits or remand the claim to the administrator for further consideration. *Smith*, 450 F.3d at 265; *Glenn v. Metro Life Insurance Co.*, 461 F.3d 660, 675 (6th Cir. 2006). Remand is the appropriate remedy here. As explained, Lincoln's decision-making process inadequately addressed material evidence of Plaintiff's claimed functional limitations, relied solely on non-examining file reviewers, and did not sufficiently explain its treatment of the favorable SSA determination. Those defects warrant a renewed and reasoned review of the claim. They do not, however, establish that Plaintiff was clearly entitled to LTD benefits for the entire disputed period, particularly because the record does not permit the Court to determine with sufficient certainty whether Plaintiff's conditions prevented her from performing the material and substantial duties of her "Own Occupation" under the Plan's terms. *See Elliott v. Metro Life Ins. Co.*, 473 F.3d 613, 622–23 (6th Cir. 2006) (remanding where the record did not permit a sufficiently accurate determination whether the claimant's documented limitations precluded performance of her occupation); *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 898 (6th Cir. 2020) (vacating an award of LTD benefits and remanding for further factfinding where additional factual determinations were necessary to establish eligibility and the amount of benefits).

Accordingly, the Court will remand Plaintiff's claim to Lincoln Insurance for a renewed, full, and fair review consistent with this Order. Because the Court remands for additional administrative consideration rather than concludes that Plaintiff is presently entitled to benefits, the Court declines to award the requested past-due benefits, future LTD benefits, health-insurance expenses, pension or 401(k) credits, reinstatement of life-insurance coverage, or other benefits-dependent relief at this time. Those requests are denied without prejudice to the extent they depend on a determination that Plaintiff was disabled and eligible

for benefits during the disputed period. Plaintiff's request for attorney's fees and costs is likewise reserved for resolution, if sought, through a timely and properly supported motion. ERISA authorizes—but does not require—the Court to award reasonable attorney's fees and costs to either party in its discretion. 29 U.S.C. § 1132(g)(1).

## III. CONCLUSION

For all the reasons stated, the Court finds that Lincoln Insurance's January 5, 2023 decision to terminate Plaintiff's LTD benefits effective February 15, 2022 was arbitrary and capricious. The Court **DENIES** Plaintiff's Motion to Strike (Doc. 45), **DENIES** Defendants' Motion for Judgment on the Administrative Record (Doc. 40), and **GRANTS IN PART** Plaintiff's Motion for Judgment on the Administrative Record (Doc. 41). The Court **VACATES** The Lincoln National Life Insurance Company's January 5, 2023 adverse benefits determination and **REMANDS** Plaintiff's claim to The Lincoln National Life Insurance Company for further administrative proceedings consistent with this Order.

The Clerk is **DIRECTED** to enter judgment accordingly and terminate this case from the Court's docket.

**IT IS SO ORDERED.**

September 28, 2026

Jeffery P. Hopkins
United States District Judge